IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TOM SCOTT                                                                                           PLAINTIFF

V.                                   NO. 4:07CV01031-BD

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration                          DEFENDANT

# MEMORANDUM OPINION AND ORDER

Plaintiff Tom Scott brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").

## I.   Procedural History:

Plaintiff filed his application for DIB on October 30, 2002, and his application for SSI on October 8, 2003.[1]  (Tr. 98-100, 453-55)  Plaintiff alleges that he became disabled on May 1, 1999.  (Tr. 131)  He claims disability due to temporomandibular joint disease ("TMJ"), 90% hearing loss in the left ear, torn ACL in the right knee, pain in the right hip and psychological disorders.  (Tr. 131)  The claims for DIB and SSI were consolidated,

---

[1] Plaintiff also filed DIB applications on February 27, 2001 and May 3, 2002, both of which were denied . (Tr. 89-92, 101-103)

1

and the ALJ[2] held a hearing on January 15, 2004. (Tr. 31) On April 29, 2004, the ALJ issued a decision denying Plaintiff benefits. (Tr. 23) The Plaintiff requested review from the Appeals Council. (Tr. 456-470) On September 24, 2004, the Appeals Council denied Plaintiff's request for review. (Tr. 4-6) Plaintiff filed a complaint in the United States District Court for the Western District of Arkansas on October 18, 2004. *Scott v. Barnhart*, CA No. 04-2229. On January 3, 2006, the Court adopted the report and recommendation of the Honorable Beverly Stites Jones and remanded the case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). (Tr. 520)

Based on the District Court's order, the Appeals Council remanded the case to the ALJ on January 25, 2006, and on October 18, 2006, the ALJ held a second hearing. (Tr. 529, 558). At this hearing, Plaintiff requested a closed period of disability from May 1, 1999 to January 19, 2004. (Tr. 562) On February 15, 2007, the ALJ issued a decision on remand denying Plaintiff benefits. (Tr. 496-508) In the decision, the ALJ found that Plaintiff had not been disabled because he had been capable of making successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 507, Finding 10) The Appeals Council considered the Plaintiff's request for review of the ALJ's decision on remand but found no reason to assume jurisdiction. (Tr. 485-487)

---

[2]The Honorable Mark S. Anderson.

Accordingly, the ALJ's February 2007 decision became the Commissioner's final decision for purposes of judicial review.

## II.    Background:

Plaintiff was 35 years old at the time of the alleged onset of his disability (Tr. 506), and had a high school diploma with some college education. (Tr. 36, 564)  For purposes of the Act, Plaintiff was classified as "a younger individual." (Tr. 506)  20 C.F.R. §§ 404.1563 and 416.963 (2006).  He had past work experience as a restaurant manager/owner and a Subway restaurant manager. (Tr. 506)  Plaintiff began attending college full-time in January, 2004, and completed college in December, 2005. (Tr. 565)  At the time of the October 2006 hearing, Plaintiff was living with his wife, attending graduate school, working as a graduate assistant, and working part-time at Lion's World Services for the Blind. (Tr. 563, 565, 580-82)

## III.   Findings of the ALJ:

On remand, the ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I); 416.920(a)(4)(I) (2005).  If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience.  *Id*. at

§§ 404.1520(b); 416.920(b).  In this case, the ALJ found that Plaintiff had not engaged in substantial gainful employment from May 1, 1999 until January 15, 2004, when he returned to college.  (Tr. 499)

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement.  *Id*. at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If not, benefits are denied.  *Id*.  A "severe" impairment significantly limits a claimant's ability to perform basic work activities.  *Id*. at §§ 404.1520(c); 416.920(c).  The ALJ found that Plaintiff had anxiety, degenerative joint disease in the right knee and hearing loss in the left ear.  (Tr. 499)

Step 3 involves a determination of whether the severe impairment meets or equals a listed impairment.  *Id*., §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If so, and the duration requirement is met, benefits are awarded.  *Id*.  If the claimant does not meet or equal a listing, then a residual functional capacity assessment is made.  *Id*., § 404.1520(a)(4) and § 416.920(a)(4).  This residual functional capacity assessment is used at Steps 4 and 5.  *Id*.  In this case, the ALJ determined that the evidence did not establish that Plaintiff had an impairment alone or in combination that met or equaled a listed impairment. (Tr. 499) Accordingly, the ALJ proceeded to make a functional capacity assessment.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity ("RFC") to perform past relevant work.  *Id*., §§ 404.1520(a)(4)(iv);

4

416.920(a)(4)(iv). If so, benefits are denied. *Id*. After a review of the Plaintiff's medical records, the ALJ determined that the Plaintiff had the ability to:

> lift-carry up to 20 pounds occasionally and 10 pounds frequently, but an unlimited ability to push-pull. Claimant also has the ability to sit 6 to 8 hours in an 8-hour workday (1-2 hours in a continuous period) and the ability to stand and/or walk 6 to 8 hours in an 8-hour workday (1-2 hours in a continuous period). However, the evidence supports a conclusion that the claimant has a 95% hearing loss in the left ear. Additionally, based on the claimant's history of anxiety, the undersigned finds that the claimant would require a work setting where interpersonal contact is routine but superficial; the complexity of tasks is learned and performed by experience; the use of judgment is required within limits; and little supervision in [sic] required for routine matters, with more detailed supervision for non-routine matters.

(Tr. 503)

The ALJ specifically found that Plaintiff's anxiety did place some limits on his ability to work and took these limitations into account in his functional capacity evaluation. (Tr. 503) The ALJ determined that Plaintiff could not return to his past relevant work as a restaurant manager/owner because these jobs required him to perform exertional and/or nonexertional demands "significantly beyond his established residual functional capacity." (Tr. 506)

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given his age, education and work experience. *Id*., §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id*. After hearing the testimony of a vocational expert, the ALJ determined that Plaintiff could have made an adjustment to other work. (Tr. 506)

5

**IV.**   <u>**Legal Analysis:**</u>

    A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. 42 U.S.C. § 405(g). This review function is limited, and the Commissioner's decision must be affirmed "if the record contains substantial evidence to support it." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a conclusion other than that of the Commissioner." *Pelkey v. Barhart*, 433 F3d 575, 578 (8th Cir. 2006). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, then the Court must affirm the decision of the Commissioner. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (citations omitted).

    B.   *Plaintiff's Residual Functional Capacity*

The Plaintiff argues that the ALJ's RFC analysis is contrary to the opinions of his treating physicians. The Defendant contends that the ALJ considered all of the evidence

on the record and the evidence as a whole supports the ALJ's RFC assessment. (#10 at p. 6) The ALJ's RFC assessment is supported by substantial evidence.

The ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Relevant evidence includes "medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Some medical evidence must support the RFC determination. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

Plaintiff complains that the ALJ ignored the diagnosis of moderate to severe obsessive-compulsive disorder by Paula Lynch, M.D. and a consultative examiner. (Tr. 271-82, 342) The ALJ's opinion, however, specifically acknowledges that Plaintiff had been treated for obsessive-compulsive disorder. (Tr. 499) The medical records indicate Dr. Lynch treated Plaintiff twelve times between February, 2001 and June, 2002 and diagnosed Plaintiff with generalized anxiety disorder and obsessive-compulsive disorder. (Tr. 271-82) At no time, however, did Dr. Lynch see any evidence of major affective syndrome, uncontrolled anxiety, psychosis, cognitive disorder, bipolar spectrum disorder, aggression, thought disorder, or perceptual disorder syndrome, and at no time did she express an opinion that Plaintiff was unable to work because of his psychological impairments. (Tr. 271-82)

At several appointments, Dr. Lynch noted that Plaintiff had either altered the dosage or stopped taking his prescribed medications. (Tr. 272-76, 278-79)  Further, Dr. Lynch noted that Plaintiff frequently missed appointments and opted for visits every two months instead of recommended monthly visits. (Tr. 272)  *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) ("[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits").

The ALJ considered Dr. Lynch's assessments along with those of Plaintiff's other treating physicians, Dr. Richard Owings, Dr. Greg Kaczenski, Dr. Tom Koehler, and Dr. Brandon Wall. (Tr. 499-502)  None of Plaintiff's other treating physicians expressed the opinion that Plaintiff was unable to work because of his psychological impairments, including his obsessive-compulsive personality disorder.

Dr. Wall, who treated Plaintiff between October, 2002 and July, 22, 2004, assessed Plaintiff's ability to do work-related activities at the request of the ALJ. Dr. Wall reported that Plaintiff had no limitations on his ability to understand and remember short, simple instructions; carry out short, simple instructions; understand and remember detailed instructions; carry out detailed instructions; or make judgments on simple work-related decision. (Tr. 555)  Further, Dr. Wall found Plaintiff's impairments did not have any affect on his ability to respond to supervision, co-workers, or work pressures in a work setting. (Tr. 556)  The last time Dr. Wall saw the Plaintiff, the Plaintiff reported things were going well and he had "learned good coping strategies to deal with his

8

anxiety, he had lowered the dose of his meds [sic], his level of functioning had improved." (Tr. 556)

On July 3, 2002, Brad Williams, Ph.D., a non-treating agency psychologist, reviewed Plaintiff's medical records and concluded Plaintiff was able to perform work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, the use of judgment is exercised within limits, and supervision required is little for routine but detailed for non-routine tasks. (Tr. 332) On December 13, 2002, Dr. Williams again reviewed the Plaintiff's mental RFC and came to the same conclusion. (Tr. 297) Dr. Kathryn Gale affirmed the assessment on March 3, 2003. (Tr. 297)

After reviewing all of the evidence on the record, the ALJ concluded that Plaintiff would require a work setting where interpersonal contact is routine but superficial, the complexity of tasks is learned and performed by experience, the use of judgment is required within limits, and little supervision is required for routine matters with more detailed supervision for non-routine matters. (Tr. 503) The ALJ's conclusion is supported by substantial evidence.

Plaintiff also argues that additional limitations should have been placed on Plaintiff on the basis of global assessment function ("GAF") scores of 50 to 60 assessed to Plaintiff by Dr. Lynch while she was treating him.[3] The Commissioner has declined to

---

[3] Plaintiff cites two cases in support of his claim that an ALJ must give special consideration to a treating physician's GAF findings. (#10 at p. 18) Neither of the cases Plaintiff cites, however, support this assertion.

9

endorse the GAF scales to evaluate Social Security claims.  See 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000).  Thus, an ALJ may afford greater weight to medical evidence and testimony than to a GAF score when the evidence requires it. See *Hudson v. Barnhart*, 345 F.3d 661, 666 (8th Cir. 2003).   The ALJ did not err in assigning greater weight to the medical evidence and testimony in this case than to the various GAF scores assigned to Plaintiff.

Plaintiff claims that the ALJ also disregarded a "doctor's chart note" indicating that he "continued to suffer from effusion" in his right knee.  (#10 at p. 17) However, the record indicates that the notation about effusion came from a radiology report from November 20, 2002 noting "[t]here is only a small joint effusion demonstrable.  No other significant abnormality is seen."  (Tr. 377)  The ALJ acknowledged that Plaintiff has degenerative joint disease in his right knee but notes the Plaintiff has not "required, sought and/or received any ongoing medical care and treatment for this impairment since November 2002."  (Tr. 505)   A consultative examiner noted Plaintiff had normal range of motion in both of his knees and found no physical abnormalities.  (Tr. 340, 342)  The ALJ's assessment is reasonable in light of the evidence in the record.

The ALJ considered all of the evidence on the record in this case, not just the evidence of non-examining and non-treating physicians.  (Tr. 499-503)  He also considered the Plaintiff's testimony, Plaintiff's daily activities, and the vocational

assessment completed by Bob White at the request of Plaintiff's attorney. (Tr. 504-505) The ALJ's RFC assessment is based on substantial evidence.

    C.    *The Hypotheticals*

Plaintiff argues that the ALJ failed to include additional non-exertional restrictions related to his anxiety, obsessive-compulsive personality disorder, GAF scores, and hearing loss in his hypotheticals to the vocational expert ("VE"). (#10 at p. 16) Defendant contends that the ALJ appropriately accounted for the impairments supported by substantive evidence. (Tr. 503)

A hypothetical posed to a vocational expert is proper if it sets forth the impairments supported by substantial evidence in the record and accepted by the ALJ as true. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). "Even though the residual functional capacity assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 620-21 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)).

The ALJ's assessment of Plaintiff's hearing loss is also supported by substantial evidence. The ALJ acknowledged that Plaintiff suffers from ninety-five percent hearing loss in his left ear and included this impairment in his hypotheticals. (Tr. 593-94) Plaintiff complains that, in spite of the fact the hypotheticals acknowledged his hearing loss, the ALJ did not include non-exertional limitations specifically based on his ability to

engage in face-to face conversation and use the telephone with his right ear. (Tr. 566, 578) At least in part because of Plaintiff's hearing loss, the ALJ limited his hypotheticals to a work setting where interpersonal contact is routine but superficial, the complexity of tasks is learned and performed by experience, the use of judgment is required within limits, and little supervision is required for routine matters with more detailed supervision for non-routine matters. (Tr. 503)

Plaintiff notes that Bob White, a vocational specialist Plaintiff hired to give a vocational assessment, concluded that Plaintiff had additional restrictions related to his obsessive-compulsive personality disorder. Specifically, Mr. White concluded that Plaintiff's physical and psychological impairments affected his dependability; reliability; judgment; ability to accept supervision; ability to work with the public, coworkers and supervisors; and relate predictably in social situations. The ALJ never adopted these limitations in his findings, however, and concluded, based on all of the evidence, that Plaintiff's psychological impairments would only minimally affect his ability to work. As set forth above, substantial evidence in the record as a whole supports the ALJ's conclusion.

    D.    *Development of the Record*

Plaintiff claims that the ALJ failed to properly develop the record. Specifically, Plaintiff argues that the ALJ should have ordered further testing or hired a medical expert

to help assess Plaintiff's medical condition, particularly Plaintiff's obsessive-compulsive personality disorder. (#10 at pp. 17-18)

It is the ALJ's duty to develop the record fully and fairly. *Snead v. Barnhart*, 360 F.3d 834, 836-37 (8th Cir. 2004). However, an ALJ does not have to seek additional clarifying statements from treating physicians unless a crucial issue is undeveloped. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "[C]ontacting a treating physician is necessary only if the doctor's records are 'inadequate for us to determine whether [the claimant is] disabled' such as 'when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" *Goff v. Barnhart,* 421 F.3d 785, 791 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).

On remand, the Court noted that none of Plaintiff's treating physicians had completed a mental or physical RFC assessment for the time period in question and ordered the ALJ to address interrogatories to the physicians who had evaluated and treated plaintiff asking them for an RFC assessment regarding plaintiff's capabilities during the time in question. (Tr. 525) The ALJ complied with the Court's order by sending interrogatories to Plaintiff's treating physicians. (Tr. 539-554) He received a response from only one of Plaintiff's treating physicians, Dr. Wall. (Tr. 555) The ALJ

13

used the RFC assessment from Dr. Wall and the other medical records to determine whether Petitioner was disabled during the relevant time period.

There is no evidence that Plaintiff was prejudiced by the ALJ's decision not to hire a medical expert or order additional testing. Any additional testing likely would not have been relevant to Plaintiff's condition during the closed period at issue in this case, and the RFC assessment from Dr. Wall gave the ALJ adequate evidence to determine whether Plaintiff was disabled. Accordingly, the Commissioner's decision should not be reversed.

## V.    Conclusion:

The Court has reviewed all of the evidence in the record, including all of the medical evidence, the agency physicians' assessments, and the hearing transcripts. There is substantial evidence in the record as a whole to support the Commissioner's conclusion that Plaintiff had the residual functional capacity to make an adjustment to other work available in the local, regional, and national economy.

Accordingly, Plaintiff's appeal is DENIED. The Clerk is directed to close the case, this 26th day of January, 2009.

_____
UNITED STATES MAGISTRATE JUDGE